UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| NICHOLETTE M. ROCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-00058 |
| | ) | JUDGE HAYNES |
| | ) | |
| T.N.H.D PARTNERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM

Plaintiff, Nicholette M. Rock, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., ("Title VII") against the Defendant, T.N.H.D. Partners, LLC, her former employer. Plaintiff asserts claims for sex discrimination and retaliation. Plaintiff alleges, in essence, that Defendant discriminated against her based upon her sex as a single mother by denying her a promotion to the positions of motorcycle parts salesperson and marketing/events coordinator and that Defendant terminated her employment in retaliation for her filing an administrative charge with the Equal Employment Opportunity Commission ("EEOC") about that denial.

Before the Court are: (1) Defendant's motion for summary judgment (Docket Entry No. 33); (2) Plaintiff's motion to amend her third amended complaint (Docket Entry No. 38); and (3) Defendant's motion to strike Plaintiff's affidavit. (Docket Entry No. 47).

In its motion for summary judgment, Defendant contends, in sum: (1) that Plaintiff failed to exhaust her administrative remedies as to the motorcycle parts salesperson position because she did

not identify that claim in her EEOC charge; (2) that Plaintiff was not qualified for the motorcycle parts salesperson position nor can she show that a similarly situated individual outside her protected class received that position; (3) that a female was hired for the marketing/events coordinator position posted in February 2010; (4) that Plaintiff failed to exhaust her administrative remedies as to the marketing/events coordinator position posted in April 2010 because she did not identify that claim in her EEOC charge; (5) that Plaintiff admits that she did not apply for the marketing/events coordinator position posted in April 2010; and (6) that Plaintiff cannot prove retaliation because she did not engage in protected activity, as she did not reasonably believe that the conduct about which she complained in her EEOC charge was unlawful. In response, Plaintiff asserts that she has submitted sufficient evidence in support of her claims of discrimination and retaliation and that she effectively exhausted her administrative remedies.

In its motion to strike, Defendant argues that Plaintiff's affidavit directly contradicts her deposition testimony and should be stricken. Plaintiff argues that her affidavit does not contradict her deposition testimony, but was filed in response to the deposition of Defendant's corporate designee, Robert Rubin.

In her motion to amend her third amended complaint, Plaintiff seeks to include a claim under the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 et seq. ("THRA"). In response, Defendant argues (1) that Plaintiff unduly delayed in amending her complaint to add this claim of which she was aware since the outset of the litigation; (2) that Plaintiff failed to notify Defendant of this amendment for the purpose of altering the amount of damages without allowing Defendant time to conduct discovery on this issue; (3) that Plaintiff has repeatedly failed to cure deficiencies in her complaints that have resulted in the filing of four complaints over the past ten months; and

(4) that allowing Plaintiff to amend her complaint at this late stage would unduly prejudice Defendant.

For the reasons set forth below, the Court concludes that Plaintiff's sex discrimination claims should be dismissed, but that Plaintiff has presented sufficient proof to establish her retaliation claim as Plaintiff had a reasonable and good faith belief that the alleged conduct was unlawful. The Court concludes that Defendant's motion to strike should be denied for lack of any factual conflict and Plaintiff's motion to amend should be denied.

## I. DEFENDANT'S MOTION TO STRIKE

Defendant contends that Plaintiff's affidavit contradicts her deposition testimony about her time records and should therefore be stricken. In her deposition, Plaintiff stated in reference to her time records as follows: "Q. . . . . Did you type in the things in the middle where it says reason? A. This looks like what I would have typed in." (Docket Entry No. 44, Plaintiff Deposition at p. 30). In her affidavit (Docket Entry No. 44, Attachment 1, at ¶ 1), Plaintiff states, in relevant part, that:

> those time records are not accurate insofar as reflecting the true hours that I worked is concerned. Further, although unaccountability [sic] Mr. Rubin has testified that he was not aware of this, the letter "c" [sic] when it appears on those time records means that any departure from my ordinary working hours was on that occasion "excused" by Defendant's management. In the month of April 2010, the notation "e" appears on ten of the twenty-two days in question.

Id. Thus, Defendant argues that Plaintiff's affidavit falsely implies that almost half of Plaintiff's "tardies" were excused by Defendant when in fact Plaintiff was the one excusing herself.

Plaintiff argues that Defendant mischaracterizes her affidavit as it was filed in response to the deposition of Defendant's corporate designee, Robert Rubin. Plaintiff asserts that Rubin was

unable to state what "E" meant. In his deposition, Rubin testified as to Plaintiff's time records as follows:

> Q. . . . . There is an E there. You see those Es in the middle column there, code hours, reasons?
> A. Okay. Yes.
> Q. That means excused, doesn't it?
> A. (Witness reviews document.) I don't do the time clocks regularly. I don't know the answer to that. I apologize.

Id., Attachment 4, Rubin Deposition at p. 43.

"A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." Hall v. Wal-Mart Stores East, LP, 637 F. Supp. 2d 558, 591 n.2 (M.D. Tenn. 2009) (quoting Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986)). Here, the Court concludes that Plaintiff's affidavit does not contradict her deposition testimony. Plaintiff did not state in her affidavit that she did not enter "E" on her time sheets. The issue is whether Plaintiff's tardiness was excused on those days in question. Plaintiff states in her deposition that the new time clock system implemented by Defendant did not reflect her hours as her schedule changed several times, that there were times that she had to wait to use the computer to clock in, that her work schedule was altered due to her preparation for the grand opening, and she never left early without first obtaining permission. See (Docket Entry No. 44, Plaintiff Deposition at pp. 27-32, 145-46). Plaintiff's affidavit is consistent with Plaintiff's deposition testimony.

Accordingly, the Court concludes that Defendant's motion to strike should be denied.

## II. PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff seeks to amend her third amended complaint to include a claim under the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 et seq. ("THRA").[1] Plaintiff asserts that her state law claim arises out of the same set of facts and the proposed amendment will not necessitate any further discovery as THRA claims are analyzed in the same manner as Title VII claims. See Rhea v. Dollar Tree Stores, Inc., 395 F. Supp.2d 696, 706 (W.D. Tenn. 2005). Defendant argues (1) that Plaintiff unduly delayed in amending her complaint; (2) that time to conduct discovery on the damages issue under the THRA is closed; (3) that Plaintiff has repeatedly failed to cure deficiencies in her complaints; and (4) that allowing Plaintiff to amend her complaint at this late stage would unduly prejudice Defendant because had Plaintiff timely asserted a claim for embarrassment and humiliation damages, it would have conducted discovery on this issue and would have required that Plaintiff undergo an expert evaluation.

Leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision as to "when justice so requires" an amendment is within the discretion of the Court. Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 248 (6th Cir. 1986).

> Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

---

[1] In both of her EEOC charges, Plaintiff notes that Defendant employs between 15-100 employees. (Docket Entry No. 1, Attachment 1; Docket Entry No. 16, Attachment 1). Thus, Plaintiff's compensatory damages under Title VII are capped at $50,000. See 42 U.S.C. § 1981a(b)(3)(A). The THRA, however, allows a plaintiff to recover damages for "humiliation and embarrassment." Tenn. Code Ann. § 4-21-306(a)(7).

<u>Head v. Jellico Housing Authority</u>, 870 F.2d 1117, 1123 (6th Cir. 1989) (citation omitted). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." <u>Wade v. Knoxville Utilities Bd.</u>, 259 F.3d 452, 459 (6th Cir. 2001) (citing <u>Duggins v. Steak 'N Shake, Inc.</u>, 195 F.3d 828, 834 (6th Cir.1999)).

Here, Plaintiff fails to provide any reason for her delay in asserting her state law claim and does not identify any new facts to excuse delay. Plaintiff has previously amended her complaint three times and had ample opportunity to assert her THRA claim at those times as the THRA claim is based upon the same facts. The deadlines for discovery, dispositive motions and expert witnesses have passed, and Defendant is prejudiced as it would have conducted discovery on the issue of damages for embarrassment and humiliation, including an expert evaluation of Plaintiff. Thus, the Court concludes that Plaintiff's motion to amend should be denied.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. FINDINGS OF FACT[2]

Defendant operates a Harley-Davidson dealership and retained Plaintiff as a receptionist upon its acquisition of the dealership from its prior owner on January 22, 2010. (Docket Entry No. 43, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 1). The dealership opened from 9:00 a.m. to 7:00 p.m., but Plaintiff generally worked from 10:00 a.m. to 5:00 p.m. <u>Id</u>. at ¶ 2;

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed <u>infra</u>, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

Docket Entry No. 44, Plaintiff Deposition at p. 27. Plaintiff was unable to work past 5:00 p.m. because of childcare arrangements. (Docket Entry No. 44, Attachment 5, Exhibit 7). Defendant was aware that Plaintiff was a single mother. (Docket Entry No. 43, at ¶ 2). Plaintiff stated that at some point, her schedule was changed to 9:00 a.m. to 5:00 p.m. (Docket Entry No. 44, Attachment 3, Plaintiff Deposition at pp. 27). Plaintiff also stated that her schedule changed again during preparation for Defendant's grand opening causing Plaintiff to lose hours at her receptionist job, but she obtained other outside work to compensate for that. Id. at pp. 27-29.

Plaintiff did not have any experience working with motorcycles nor had she owned one, but in January 2010 she expressed interest in the motorcycle parts salesperson position. (Docket Entry No. 43, at ¶ 3). Plaintiff did not submit a resume for the position. Id. at ¶ 4. Plaintiff, however, did send an email to Jeff Hastings, the parts manager, expressing her interest in the position. (Docket Entry No. 44, Plaintiff Deposition at pp. 42-43, 51). To familiarize herself with Harley-Davidson motorcycles, Plaintiff took online courses offered by Defendant that "were specific to parts and what Harley-Davidson is." Id. at pp. 36-37. Yet, of the twenty courses, Plaintiff completed seven or eight. Id. Hastings informed Plaintiff that Defendant hired Gary Thompson, a male employee, for the position. (Docket Entry No. 43, at ¶ 5). Plaintiff also states that Hastings told her that she had "gravy train hours because she was a single mom." Id. at ¶ 6. According to Defendant, Plaintiff did not have "understanding of the complete motorcycle and the parts business. . . . In other words, not knowing the entire parts, every part to be sold, what goes on certain bikes and what doesn't." (Docket Entry No. 44, Attachment 4, Robert Rubin Deposition at p. 17). On the other hand, Thompson had "rebuilt multiple Harley-Davidson motorcycles." Id.

On February 24, 2010, Scott Wall, the owner/general manager, asked Plaintiff to assist with Defendant's grand opening celebration. (Docket Entry No. 43, at ¶ 7; Docket Entry No. 44, Plaintiff Deposition at p. 43). On February 25, 2010, Plaintiff learned that the marketing/events coordinator position was open, and Plaintiff asked Wall if she could apply for that position. Id. at ¶¶ 8-9. According to Plaintiff, Wall stated, "You are already handicapped because you are a single mom. Don't you have more important things to take care of?" Id. at ¶ 10. Wall then told Plaintiff to apply. Id. at ¶ 11. Plaintiff emailed Wall her resume and was interviewed for the position the next day. Id. at ¶ 12. Plaintiff states that Wall told her that she had "the inside track" on the position. (Docket Entry No. 44, Plaintiff Deposition at p. 58). Approximately two days later, Wall hired Deborah Watts, a female, for the marketing/events coordinator position. (Docket Entry No. 43, at ¶ 14). Watts is married and has one child. (Docket Entry No. 44, Plaintiff Deposition at p. 71). On March 15, 2010, Watts learned that she was accepted into a doctoral program beginning in May 2010. Id., Attachment 5, at 29. Watts worked as the marketing/events coordinator through the grand opening that took place from April 9-11, 2010. (Docket Entry No. 43, at ¶ 15).

On April 12, 2010, Plaintiff learned that the Defendant reposted the marketing/events coordinator position on Craigslist, an internet based classified service, after Watts's decision to return to school for her doctoral degree. Id. at ¶ 16. Plaintiff did not ask Wall about this posting or state her interest in the marketing/events coordinator position, nor submit a resume or otherwise formally apply for the position. Id. at ¶ 17. Plaintiff explained that she was not informed of the

posting and that she did not need to resubmit her resume because she previously applied for the position and had proven herself during the grand opening. (Docket Entry No. 44, at pp. 77-78).[3]

Defendant first offered the marketing/events coordinator position to Catherine Moon and Michelle Stance, two female applicants, both of whom rejected the offer in early April or May 2010. (Docket Entry No. 36, Attachment 2, Rubin Deposition at pp. 55-58). On May 17, 2010, Defendant hired Kate Shipp, a female, as part-time marketing coordinator and David Nivin, a male, as part-time event coordinator. Id. at p. 61. As of January 2011, Nivin's job was eliminated, and Shipp remained as the marketing/events coordinator on a part-time basis. Id.

On April 13, 2010, Plaintiff filed a discrimination charge with the EEOC asserting that Defendant discriminated against her based upon her sex when it hired Watts for the marketing/events coordinator position on February 26, 2010. (Docket Entry No. 43, at ¶ 18). In her EEOC charge, Plaintiff states that Wall "told me that he would not promote me because I already had a handicap being a single mom." (Docket Entry No. 1, Attachment 1). On April 23, 2010, Wall met with Plaintiff in his office to discuss her tardiness at work. (Docket Entry No. 43, at ¶ 19). According to Plaintiff's time records, Plaintiff arrived late and left early on an almost daily basis. Id. at ¶ 20. From April 1, 2010 to April 23, 2010, Plaintiff was late to work every day with the exception of April 2, 2010. Id. at ¶ 21; Docket Entry No. 36, Attachment 1 at 18-27. Plaintiff, however, stated in her deposition: that the new time clock system implemented by Defendant did not reflect her hours as her schedule changed several times; that there were times that she had to wait to use the computer

---

[3]Plaintiff also states that Watts told her that Wall told Watts not to tell Plaintiff about the Craigslist posting and that he did not want Plaintiff to know about it. (Docket Entry No. 44, Plaintiff Deposition at pp. 74, 76). This testimony is inadmissible hearsay and cannot be considered by the Court.

so that she could clock in; that her work schedule was altered due to her preparation for the grand opening; and that she never left early without first obtaining permission. (Docket Entry No. 44, Plaintiff Deposition at pp. 27-32, 145-46).

During this meeting, Wall acknowledged his awareness of Plaintiff's EEOC charge. (Docket Entry No. 44, Attachment 3, Plaintiff Deposition at pp. 89, 91-92). Plaintiff states that Wall told her that she had thirty days to correct her "time-card issues." Id. at p. 91. According to Plaintiff, Wall continued to discuss Plaintiff's attendance and tardiness issues, but after she mentioned that she had retained an attorney, Wall terminated her due to her failure to arrive at work on time. Id. at pp. 92-93; Docket Entry No. 44, Attachment 5 at 37. On April 26, 2010, Plaintiff filed an EEOC charge against Defendant for retaliation in filing her previous EEOC charge on April 13, 2010. (Docket Entry No. 16, Attachment 1).

### B. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment _sua sponte_, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied

requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine

`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting <u>Liberty</u> <u>Lobby</u>).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict</u> -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be

read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.     Complex cases are not necessarily inappropriate for summary judgment.

2.     Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.     The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.     This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.     A court should apply a federal directed verdict standard in ruling on a motion for summary judgment.  The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.     As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.     The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.     The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.     The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under

the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Failure to Promote Claims

Under Title VII, an employer cannot discriminate against any individual with respect to the employee's compensation, terms, conditions or privileges of employment, because of such individual's national origin. 42 U.S.C. § 2000e-2(a)(1). "In a disparate treatment case, liability depends on whether the protected trait [here, sex] actually motivated the employer's decision. . . . [A] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

The language of Title VII "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment . . . ." Harris, 510 U.S. at 21 (citing Meritor, 477 U.S. at 64) (some internal quotation marks omitted).

> "A prima facie case of disparate treatment under Title VII must establish by a preponderance of the evidence that the defendant took action affecting the plaintiff's compensation, terms, conditions or privileges of employment under circumstances which give rise to an inference of unlawful discrimination. Thus, the prima facie case focuses upon the primary factual inquiries of any disparate treatment case: "'[whether] the defendant intentionally discriminated against the plaintiff'", and whether the employer treats people less favorably than others because of race, color, religion, sex or national origin.

Beaven v. Com. of Ky., 783 F.2d 672, 675 (6th Cir.1986) (citations omitted).

"[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an

inference of discrimination." Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir.1997). Yet, "[t]he direct evidence and circumstantial evidence paths are mutually exclusive . . . . If a plaintiff can produce direct evidence of discrimination then the McDonnell Douglas-Burdine paradigm is of no consequence. Similarly, if a plaintiff attempts to prove its case using the McDonnell Douglas-Burdine paradigm, then the party is not required to introduce direct evidence of discrimination." Id. at 348-49. Plaintiff does not state that she seeks to prove her claims by using direct evidence. Yet, because Plaintiff cites to two statements-- Hastings telling Plaintiff that she had "gravy train hours because she was a single mom," and Wall stating "You are already handicapped because you are a single mom. Don't you have more important things to take care of?-- about Plaintiff being a single mother, the Court will analyze Plaintiff's claims using both direct and circumstantial evidence.

"Direct evidence 'is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000) (citation omitted). "With direct evidence, the existence of unlawful discrimination is 'patent.'" Bartlik v. United States Dep't of Labor, 73 F.3d 100, 103 n.5 (6th Cir. 1996) (citation omitted). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999).

Only rarely will direct evidence of discrimination be available. Kline, 128 F.3d at 348. The direct evidence must be credible and "cannot be based on rumors, conclusory allegations, or subjective beliefs." Hein v. All Am. Plywood, Inc., 232 F.3d 482, 488 (6th Cir. 2000). Further,

evidence cannot be considered direct evidence where it would require a jury to infer a fact. Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003); Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1081 (6th Cir. 1994). Moreover, "direct evidence of discrimination is irrelevant . . . unless the alleged discrimination is because of [here, sex.]" Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 469 (6th Cir. 2005).

In Kocak, the Sixth Circuit concluded that a supervisor's question as to whether the plaintiff was pregnant or intended on having more children did not constitute direct evidence. Id. at 471. The Court stated that "[c]ertain comments can be 'too abstract, in addition to being irrelevant and prejudicial, to support a finding of [pregnancy] discrimination.'" Id. (quoting Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 n. 2 (6th Cir.1986)).

Here, the Court concludes that Hastings's and Wall's alleged statements are too abstract to constitute direct evidence of discrimination and require an inference. See Philipsen v. University of Michigan Bd. of Regents, No. 06-CV-11977-DT, 2007 WL 907822, at *5 (E.D. Mich. March 22, 2007) (the question "I've got an offer for you. Before I give it to you, I have a question. . . . Are you sure you don't want to stay at home to be with your children?" was not direct evidence of discrimination on the basis of plaintiff's status as a mother with young children as the question "does not *necessarily* evince a discriminatory intent" nor does it "*compel* a reasonable factfinder to conclude that Plaintiff's job offer was rescinded for discriminatory reasons.") (emphasis in original); Malone v. USA Today, 348 F. Supp.2d 866, 873 (E.D. Mich.2004) (supervisor's alleged question as to whether the plaintiff would be coming back to work after maternity leave and alleged statement, "Why don't you take some time, think about what kind of job you will be able to do or will make you happy, think about it" were not direct evidence of pregnancy discrimination); Fuller v. GTE

Corporation/Contel Cellular, Inc., 926 F. Supp. 653, 656 (M.D. Tenn.1996) (finding no direct evidence of gender discrimination in a "sex-plus" discrimination action where supervisor repeatedly made negative comments to plaintiff about plaintiff's children and told plaintiff she needed to get her priorities straight and that her job came first).

Because Plaintiff has failed to produce direct evidence of discrimination, Plaintiff must present sufficient circumstantial evidence to prove her claims. A plaintiff may create a presumption of discrimination when she establishes the following elements of her prima facie case by a preponderance of the evidence: (1) membership in a protected class; (2) that she suffered from an adverse employment action; (3) that she was qualified for the position; and (4) that she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). To qualify as "similarly-situated," the employee to whom the comparison is drawn "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). In the context of a "sex-plus" discrimination claim, i.e., where a female plaintiff "'is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic,'" Derungs v. Wal-Mart Stores, Inc., 374 F.3d 428, 432 (6th Cir. 2004) (quoting Derungs v. Wal-Mart Stores, Inc., 141 F. Supp.2d 884, 890-91 (S.D. Ohio 2000)), "[a female] plaintiff must ... prove that the subclass of women was unfavorably treated *as compared to the corresponding subclass of men.*

Absent such a subclass, a plaintiff cannot establish sex discrimination.'" Id., (quoting Derungs, 141 F. Supp.2d at 891) (emphasis in original).

If the Plaintiff establishes her prima facie case, the Defendant may offer any legitimate, non-discriminatory reason for the action, which Plaintiff may then rebut with evidence of pretext. Alexander v. Local 496, Laborers' Intern. Union of North America, 177 F.3d 394, 403 (6th Cir.1999) (citing Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir.1996)). The burden at all times, remains with the Plaintiff. Id.

As to Plaintiff's claim regarding the motorcycle parts salesperson position, Defendant contends that Plaintiff failed to exhaust her administrative remedies concerning this claim because she did not identify that claim in her EEOC charge and Plaintiff failed to prove that she was qualified for the motorcycle parts salesperson position. A plaintiff alleging discrimination under Title VII must first file a charge with the EEOC within a certain time after the occurrence of the alleged wrongful act or acts. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." Id. The purpose of this rule is to give "the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute." Id. Courts, however, recognize that "because aggrieved employees-and not attorneys-usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." Id. at 362. Of course, "[t]his expanded rule does not mean . . . that plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court." Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir. 1998). However, "whe[n]

facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Id.

In Bush v. Gambro Healthcare, Inc., No. 3:05-0019, 2006 WL 316871 (M.D. Tenn. Feb. 8, 2006), the plaintiff filed a Title VII action for her employer's failure to promote her to the "Assistant Regional Reimbursement Manager" ("ARRM") and the "Contract Administrator" ("CA") positions. There, the plaintiff's EEOC charge only mentioned the AARM position and not the CA position. Id. at *11-12. Concluding that the plaintiff did not meet the Title VII prerequisites as to her claim regarding the CA position and granting the defendant's motion for summary judgment, the Court stated:

> In this case, any investigation which could reasonably be expected to grow out of Plaintiff's failure to promote claim as set forth in her Third EEOC Charge would necessarily be limited to the ARRM position. The Charge itself is so limiting in that it specifically identifies the denial of the ARRM promotion as the basis for the charge and specifically limits the date of the alleged discrimination to one day, March 12, 2004, when Bush was informed that she would not receive the promotion.

Id. at *12.

Here, Plaintiff's first EEOC charge referenced only the marketing/events coordinator position that she was denied on February 26, 2010. Thus, Plaintiff's EEOC charge is specifically limited to that position and the alleged discrimination is limited to one day, February, 26, 2010. Plaintiff does not make any mention of the motorcycle parts salesperson position. The motorcycle parts salesperson position and the marketing/events coordinator position were available on different dates, involved different departments and had different decisionmakers–Hastings with the sales position and Wall with the marketing position.

Moreover, the evidence is unclear if Plaintiff even applied for the motorcycle parts salesperson position as she did not submit a resume. In any event, Plaintiff fails to prove that she was qualified for the motorcycle parts salesperson position. Plaintiff neither had any experience working on motorcycles nor had she owned one. Plaintiff attempted to familiarize herself with Harley-Davidson motorcycles, but failed to complete even half of the online courses offered by Defendant on Harley-Davidson motorcycles and their specific motorcycle parts. Yet, Thompson, the selectee, had experience in rebuilding multiple Harley-Davidson motorcycles. Accordingly, for these reasons the Court concludes that Plaintiff's claim as to the sales position should be dismissed.

As to Plaintiff's claim regarding the marketing/events coordinator position posted in February 2010, Defendant contends that Plaintiff cannot prove a prima facie showing of discrimination as Defendant hired Watts, a female, for the position. Plaintiff argues that the issue is whether she was discriminated on the basis of her sex as a single mother.

In Fuller, 926 F. Supp. at 656, the plaintiff alleged that the defendant discriminated against her based upon her gender as a mother of young children. Applying the "sex plus" discrimination analysis, the district court noted that the plaintiff "must first show that she was treated differently from men." Id. at 658. The district court stated:

> Discrimination against married women constitutes discrimination on the basis of sex only if a different standard, i.e., the marital status of the person, has been applied to men and women. Absent proof of the standard applied to men, obviously the plaintiffs have not established that such standard differs from the one applied to women.

Id. Because the plaintiff did not produce any evidence to show that fathers of young children received better or even different treatment, the court granted the defendant's motion for summary judgment. Id.

Moreover, in <u>Derungs</u>, the district provided the following illustration as to what a plaintiff must show to support a "sex-plus" claim:

> For example, a plaintiff might allege that her employer discriminated against women with children in day care by failing to permit her to leave work promptly at 4:30 p.m. In order to establish sex discrimination under such a theory, the plaintiff would have to demonstrate that her employer permitted men with children in day care to leave work promptly at 4:30 p.m. Absent such evidence, the plaintiff could not possibly demonstrate that the employer's discrimination was because of sex.

141 F. Supp.2d at 891 n.8; <u>see</u> <u>Gee-Thomas v. Cingular Wireless</u>, 324 F. Supp.2d 875, 884 (M.D. Tenn. 2004) (considering plaintiff's claim to be one of discriminatory treatment on the basis of sex plus marital and family status, the court concluded that "plaintiff is able to show that a similarly-situated person (i.e., a married person with children) outside of the protected class (i.e., male instead of female) received the job and she did not. Plaintiff has established her *prima facie* case).

Here, Watts, a female with a child, was selected for the marketing/events coordinator position posted in February 2010. Plaintiff has failed to show that an unmarried male with a child or males in general were treated more favorably than Plaintiff was treated. <u>See</u> <u>Fuller</u>, 926 F. Supp. at 658 (the court noting that the plaintiff did not allege that males were treated more favorably, that plaintiff did not cite any instance of men receiving better or different treatment than plaintiff, nor did plaintiff cite anything to indicate that women were treated differently from men or that women with young children were treated differently from men with young children). Accordingly, the Court concludes that Plaintiff's claim as to the marketing/events coordinator position posted in February 2010 is without merit.

Plaintiff, in essence, argues that Plaintiff may establish a _prima_ _facie_ showing of sex discrimination based upon stereotyped remarks playing a role in the discriminatory conduct without evidence of a male comparator, citing Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107 (2nd Cir. 2004) and Letteri v. Equant, Inc., 478 F.3d 640 (4th Cir. 2007). Plaintiff's reliance on these cases is misplaced. Analyzing breast-feeding claims in the context of "sex-plus" discrimination cases outside of this Circuit, the Sixth Circuit noted that such claims have been deemed outside the bounds of sex discrimination cases because of the lack of a male comparator. Derungs, 374 F.3d at 438. The Sixth Circuit noted:

> "Sex-plus" discrimination exists when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic. See e.g., Phillips v. Martin Marietta Corp., 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). Under a "sex-plus" theory of discrimination, it is impermissible to treat men characterized by some additional characteristic more or less favorably than women with the same added characteristic. See, Fisher v. Vassar College, 70 F.3d 1420, 1448 (2d Cir.1995), on reh'g en banc, 114 F.3d 1332 (2d Cir.1997), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

Id. at 438 n.8; see id. at 439 ("'"[G]ender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender. Such plaintiffs cannot make the requisite showing that they were treated differently from similarly situated members of the opposite gender.'") (quoting Coleman v. B-G Maintenance Management, 108 F.3d 1199, 1204 (10th Cir.1997)); see also Philipsen, 2007 WL 907822, at *6-9 (E.D. Mich. March 22, 2007) (adopting the reasoning in Fuller, Fisher and Coleman, as well as in Derungs, 374 F.3d 428 and Derungs, 141 F. Supp.2d 884, and concluding that sex-plus claims cannot be successful unless there is a corresponding subclass of members of the opposite sex). Based upon this authority cited, the Court concludes that Plaintiff's argument fails.

As to the marketing/events coordinator position posted in April 2010, Defendant contends that Plaintiff failed to exhaust her administrative remedies because she did not identify that claim in her EEOC charge, that Plaintiff did not apply for the position, and that Plaintiff cannot prove the fourth prong of her prima facie showing as to the marketing/events coordinator position posted in April 2010 because Defendant offered the position to three female applicants.

For these collective reasons, the Court concludes that Plaintiff's claim fails. The evidence shows that the marketing/events coordinator position was offered to two females who rejected the position and the position was eventually filled by a female and a male, who split the job duties. Plaintiff fails to show that an unmarried male with a child or males in general were treated more favorably than Plaintiff was treated. Accordingly, this claim is without merit.

### 2. Retaliation Claim

Under Title VII, an employer cannot retaliate against an employee who engages in any activity protected under Title VII. 42 U.S.C. § 2000e-3(a). Title VII's prohibition against retaliation extends to the employee's opposition to any unlawful employment practice and the employee's participation in an investigation, proceeding or hearing under Title VII. Id. Plaintiff's claim is that Defendant retaliated against her by terminating her employment after she filed her April 13, 2010, EEOC complaint.

To establish a prima facie case of retaliation, Plaintiff must show: (1) that she engaged in an activity protected by Title VII; (2) that the exercise of her civil rights was known to Defendant; (3) thereafter Defendant took an employment action adverse to Plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000). "[A] plaintiff does not have to prove the validity of

the grievance she was allegedly punished for lodging; 'opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated.'" Robbins v. Jefferson Cnty. Sch. Dist. R-1, 186 F.3d 1253, 1258 (quoting Love v. RE/MAX of America, Inc., 738 F.2d 383, 385 (10th Cir. 1984)). "'[T]he manner of opposition must be reasonable, and that the opposition be based on "a reasonable and good faith belief that the opposed practices were unlawful.' In other words, a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful." Johnson v. University of Cincinnati, 215 F.3d 561, 579-580 (6th Cir. 2000) (citation omitted).

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Nguyen, 229 F.3d at 563. "'A causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation.... However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.'" Id. at 566 (citation omitted).

"[A]lthough no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." Id. at 563; see id. at 567 ("[T]here may be circumstances where evidence of temporal proximity alone would be sufficient to support" an inference of a causal link.). Thus, temporal proximity between the protected activity and the adverse employment action can give rise to an inference of retaliation. Nguyen, 229 F.3d at 563. See e.g., DiCarlo v. Potter, 358 F.3d 408 (6th Cir. 2004) (recommendation to terminate an employee thirteen (13) days after filing his EEOC charge

was sufficient evidence of a causal connection and inference of retaliatory motive); Mickey v. Zeidler Tool and Die Co. 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").

"'[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.'" Nguyen, 229 F.3d at 566 (quoting EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997). "'[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.'" Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008) (citing Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003)).

Once a plaintiff has met her burden in establishing a prima facie case of retaliation, the defendant must provide a legitimate, non-discriminatory reasons for the adverse employment action. Barnett v. Department of Veterans Affairs, 153 F.3d 338 (6th Cir. 1998). If the defendant is able to show legitimate, nondiscriminatory reasons for the adverse employment action, the burden of persuasion returns to the plaintiff to demonstrate that the reasons offered by the defendant were pretextual. Id.

Defendant contends that because no reasonable person could believe that the April 13, 2010 EEOC charge stated a violation under Title VII, Plaintiff therefore did not engage in protected activity and her retaliation claim should be dismissed. Defendant argues that Plaintiff was not reasonable in believing that its decision to hire Watts, a female, instead of promoting Plaintiff for the marketing/events coordinator position was based upon sex. Defendant further argues that the cases cited by Plaintiff, Back and Letteri, do not reflect the law in this circuit nor are they factually similar.

In Gee-Thomas the district court noted, without deciding the issue, the disagreement among courts as to whether a plaintiff asserting sex-plus discrimination must compare herself to a similarly-situated person of the opposite sex to prevail on her claim. 324 F. Supp.2d at 884 n.6. Similarly, the Philipsen Court noted that the Sixth Circuit has not directly addressed the question of "whether the proper comparator may only include a person outside of the protected class who has the same 'plus characteristic' as the plaintiff . . . or whether the comparator may include any *person* (male or female) who lacks the "plus" characteristic . . . . 2007 WL 907822, at *6. Based upon this authority, the Court concludes that Plaintiff, albeit mistaken, had "a reasonable and good faith belief that the opposed practices were unlawful." Further, Plaintiff's evidence shows that Wall initially gave Plaintiff thirty days to correct her tardiness and attendance issues, but then fired her after she raised the topic of her EEOC charge and that she had retained an attorney. Thus, Plaintiff has made her prima facie showing, and Plaintiff's proof could lead a reasonable juror to find that Defendant's stated reasons for Plaintiff's termination were pretext for retaliation. Thus, Defendant's motion on Plaintiff's retaliation claim should be denied.

Accordingly, for these reasons the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 33) should be granted as to Plaintiff's discrimination claims, but denied as to her retaliation claim. Further, Defendant's motion to strike (Docket Entry No. 47) and Plaintiff's motion to amend (Docket Entry No. 38) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ____ day of June, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge